**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIE LAMAR YOUNG, JR.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:07-2266** |
| **v.** | : | **(CALDWELL, D.J.)** |
| | | **(MANNION, M.J.)** |
| **JEFFERY A. BEARD,** *et al.,* | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

Before the Court are two motions: The Motion to Dismiss Plaintiff's Amended Complaint by Dr. Luis Araneda[1] and Dawn Mills (the "Medical Defendants" and the "Medical Defendants' Motion"), (Doc. No. 59), and the Corrections Defendants' Motion to Dismiss Plaintiff's Amended Complaint (the "Corrections Defendants" and the "Corrections Defendants' Motion"), (Doc. No. 47). For the reasons elaborated below, and after considering the parties' submissions, federal and state statutory authority and case law, and other persuasive authority, the Court will **RECOMMEND GRANTING** the Medical Defendants' Motion, and **GRANTING** in part and **DENYING** in part the Corrections Defendants' Motion.

## I.    FACTS AND PROCEDURAL BACKGROUND

Plaintiff's Complaint, (Doc. No. 1), was filed, as docketed by the clerk's

---

[1] The Court spells Dr. Araneda's name as it appears on *his* motion. (Doc. No. 59.)

1

office at Scranton, Pennsylvania, on December 14, 2007. However, pursuant to the "prison mailbox rule," a prisoner's filing is considered filed on the day that the prisoner delivered the filing to prison officials for mailing to the district court. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). It appears from plaintiff's proof of service, (Doc. No. 1 at 28), that the complaint was filed as early as December 5, 2007. In that complaint, plaintiff, a prisoner incarcerated at State Correctional Institution Huntingdon, Pennsylvania, ("SCI Huntingdon"), made broad allegations of wrongdoing against dozens (if not hundreds) of defendants. Thereafter, this Court, pursuant to statutory authority, issued two orders, (Doc. No. 11 & Doc. No. 15), rejecting the complaint as insufficient under the Federal Rules of Civil Procedure and as insufficiently pled under Section 1983 standards. The Court directed plaintiff to file an amended complaint conforming to the rules, including Rule 8, and making individualized allegations of wrongdoing in regard to each defendant. Plaintiff filed a forty-four page single-spaced handwritten amended complaint. (Doc. No. 18.) Like the original complaint, the amended complaint is rambling, repetitive, and difficult to follow. It is a civil rights action asserted under 42 U.S.C. §1983 (and under unspecified Pennsylvania causes of action) asserting wrongdoing by over one-hundred defendants, including supervisory officials, prison lieutenants, prison sergeants, correctional officers, doctors, physician assistants, and nurses.

The gravamen of the amended complaint is that while plaintiff had been

a prisoner at the State Correctional Institution at Graterford, Pennsylvania, ("SCI Graterford"), he was "accused of allegedly assaulting a large number of prison officials by various different physical means." (Doc. No. 18 at 4.) The authorities transferred plaintiff to SCI Huntingdon with a custody status requiring his serving time in the Restrictive Housing Unit, (the "RHU"). SCI Huntingdon officers and staff knew that the prisoner had been sent to SCI Huntingdon for allegedly assaulting prison staff. Plaintiff alleges a four-year (as of the date the amended complaint was signed – April 8, 2008) illegal course of conduct by SCI Huntingdon staff against him, punishing him for his alleged wrongdoing while at SCI Graterford. He further alleges that his attempts to notify supervisory officials of the wrongdoing directed at him has met with no results, and that prison staff charged with investigating and hearing grievances did nothing. He further alleges that supervisors, who were responsible for his care and safety and who should have known that prison staff would exact revenge, instituted no procedures to protect plaintiff. It appears that he is asserting constitutional claims under the Eighth Amendment's Cruel and Unusual Punishment Clause and under the Fourteenth Amendment's Due Process Clause. Apparently he is also asserting unspecified state causes of action.

Two motions to dismiss were subsequently filed. One motion was filed by defendants Dr. Luis Araneda and Physician Assistant Dawn Mills. *See* Doc. No. 59 (the motion); Doc. No. 60 (opening brief); Doc. No. 76 (opposition

brief); Doc. No. 80 (reply brief). The other motion was submitted on behalf of the Corrections Defendants, which appear to be every other defendant in this action. *See* Doc. No. 47 (the motion); Doc. No. 48 (opening brief); Doc. No. 66 (opposition brief).[2] The motions have been briefed.[3]

## II.  STANDARD OF REVIEW

*Motion to Dismiss Standard Under Rule 12(b)(6).* The motions to dismiss are brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable

---

[2] The Corrections Defendants have not filed a reply brief.

[3] Additionally, plaintiff has filed any number of procedurally irregular affidavits and letters.

4

expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss under Rule 12(b)(6), the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

*Standard of Review of Substantive Law Under 42 U.S.C. 1983.* Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the United States Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

Liability under §1983 is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated in part on other grounds by* *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). A defendant who supervised a malfeasor but did not actually inflict the malfeasance is not liable under §1983 on a theory of respondeat superior unless he personally directed in the deprivation. *Id.; Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999). But a defendant who lacked any supervisory power over the malfeasor and who was not personally, affirmatively involved in the malfeasance is not liable under §1983. *Robinson*, 120 F.3d at 1294.

Furthermore, under prior case law, a supervisor could be held liable for the wrongdoing of a subordinate if he had actual knowledge and acquiesced

in the deprivation of plaintiff's constitutional right by the subordinate because such nonfeasance (by the supervisor) equates to personal, affirmative involvement. *Robinson*, 120 F.3d at 1293-94; *Baker v. Monroe Twp.*, 50 F.3d 1186, 1994 (3d Cir. 1995). However, the Supreme Court recently held:

> Respondent ... argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. *We reject this argument*. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a §1983 suit or a *Bivens* action -- where masters do not answer for the torts of their servants -- the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.... *[P]urpose rather than knowledge is required to impose* ... liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Ashcroft v. Iqbal*, No. 07-1015, --- S. Ct. ----, 2009 WL 1361536, at *12, 2009 U.S. LEXIS 3472 (May 18, 2009) (Kennedy, J.); *see also id.*, 2009 WL 1361536, at *22 (Souter, J.) (dissenting) (recognizing that the majority in *Iqbal* rejected the Third Circuit's "actual knowledge ... and acquiesce[nce]" standard for supervisory liability). This is now the law and it applies at least to all Section 1983 discrimination claims now pending prior to the determination of all appeals and all opportunities for reconsideration. *See Griffith v. Kentucky*, 479 U.S. 314, 323 (1987) ("As a practical matter, of course, we cannot hear each case pending on direct review and apply the new rule. But we fulfill our

judicial responsibility by instructing the lower courts to apply the new rule retroactively to cases not yet final.").

## III.    LEGAL ANALYSIS

This report responds to each motion and to each argument asserted in each opening brief, in turn.

### A.    The Medical Defendants' Motion

#### 1.    Failure of Service of Process

In the Medical Defendants' opening brief, in a one-sentence footnote, in a miniature typeface, the Medical Defendants allege that Dr. Araneda was not served. *See* Doc. No. 60 at 2 n.1. No case law is cited. The footnote fails to cite either Rule 12(b)(4) (insufficient process) or Rule 12(b)(5) (insufficient service of process). Defendants' argument failed to put plaintiff on notice of defendant Araneda's position. Not surprisingly, plaintiff failed to respond to this argument in his opposition brief. The Medical Defendants thereafter substantially developed their argument in their reply brief. *See* Doc. No. 80 at 2-3 (citing case law). Thereafter, plaintiff sur-replied by way of a letter to the Court. *See* Doc. No. 81. However, Defendants' position is waived for failure to argue it in their opening brief. *See, e.g.*, 330 *West Hubbard Restaurant Corp. v. United States*, 203 F.3d 990, 997 (7th Cir. 2000) ("A party's failure to address or develop a claim in its opening brief constitutes a waiver of that claim ... especially when they are represented by counsel.") (emphasis

added); *Hadix v. Caruso,* Civ. A. No. 4:92-110, 2006 WL 2925270, at \*3 n.2 (W.D. Mich. 2006).

Furthermore, the Court notes that defendant Araneda has actual notice of this action, is represented by counsel, and has (through counsel) filed multiple briefs. If parties preserve their arguments for their reply briefs, opponents are blind sided and are forced to file duplicative and irregular filings in order to make an effective response (to the argument appearing in the reply brief). That is precisely what happened here. Such irregular, late, and unnecessary filings burden the courts and burden other litigants waiting for their actions to be heard.

### 2.    Statute of Limitations

For statute of limitations purposes this action was filed no later than December 14, 2007 (the date the original complaint was docketed), or, perhaps, as early as December 5, 2007 (the date appearing on plaintiff's certificate of service attached to his original complaint). It is settled law that Section 1983 actions for personal injury alleging only connections to Pennsylvania apply Pennsylvania's two year statute of limitations. Thus allegations relating events prior to December 5, 2007 would seem to be barred. *See, e.g.*, *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74 (3d Cir. 1989).

Plaintiff makes two responses. *First*, plaintiff seems to argue that this action was initially and inadvertently misfiled (by him) in the United States District Court for the Eastern District of Pennsylvania. *See* Doc. No. 1 at 29

(citing Civ. A. No. 03-5432 in the Eastern District). He further argues that that action was dismissed for improper venue on October 26, 2007, thereby giving him thirty days to make a proper filing in the correct venue (ostensibly, this district). (Doc. No. 76 at 4.) He does not explain why transfer was not the proper remedy in these circumstances and he cites no rule or case as support for his claim that he was entitled to make a new filing within thirty days. Furthermore, this action was not filed within 30 days of October 26, 2007; nor does he cite any court order extending the time to make a filing. Finally, the Court notes that no dismissal was ordered on October 26, 2007. *See Young v. Medden*, Civ. A. No. 2:03-5432 (E.D. Pa. Oct. 26, 2007) (Dckt. No. 83) (ORDER) (McLaughlin, J.) (denying plaintiff's motion to amend the complaint); *see also id.* (E.D. Pa. Dec. 11, 2007) (Dckt. No. 88) (denying plaintiff's motion to transfer action to the Middle District). In fact, not only has the Eastern District action not been dismissed, but the Eastern District action has not yet reached final judgment. Plaintiff's argument, at best, appears factually and legally mistaken.

*Second*, plaintiff argues that the wrongs committed by the Medical Defendants are part of a continuing violation some of whose events, allegedly, occurred within the limitations period. *See* Doc. No. 76 at 4. The Third Circuit does not apply the continuing violations doctrine in the Section 1983 context, and to the extent that it might apply, the doctrine does not apply on these facts. *See Hunt v. Pa. Dep't. of Corrections*, 289 Fed. Appx. 507, 509 (3d Cir.

2008) (noting that " neither this Court nor the Supreme Court has ever applied the continuing violation doctrine outside of the employment discrimination context"); *see also Pike v. City of Mission*, 731 F.2d 665, 660 (10th Cir. 1984 (*en banc*) (declining to apply continuing violations doctrine in Section 1983 litigation). In other words, if the Medical Defendants engaged in actionable conduct outside the limitations period, other wrongful conduct of a similar nature in the limitations period does not toll or extend the time in which plaintiff may seek relief. The wrongs plaintiff alleges the Medical Defendants committed, to the extent that they can be identified, to the extent that they are well-pled, wholly relate to harassment (including racially derogatory remarks). Plaintiff does not argue or allege that the Medical Defendants' wrongful conduct outside the limitations period was somehow concealed from him. Plaintiff does not argue that the Medical Defendants' initial wrongful conduct (outside the limitations period) was not actionable, but somehow became actionable when combined with other wrongful conduct by the Medical Defendants within the limitations period. Plaintiff does not argue that the Medical Defendants' initial wrongful conduct led to lingering consequences which only became known during the limitations period. Rather, plaintiff merely alleges discrete acts of wrongdoing by the Medical Defendants. It follows that to the extent any of the Medical Defendants' conduct happened outside the limitations period, i.e., prior to December 5, 2005, it is not actionable. *See O'Connor v. City of Newark*, 440 F.3d 125, 129 (3d Cir. 2006)

(holding that "that time-barred claims cannot be resurrected by being aggregated and labeled continuing violations"); *Hunt*, 289 Fed. Appx. at 509 ("Accordingly, while Hunt has alleged a myriad of claims which, if timely, might have been individually actionable, they do not constitute a 'continuing violation.'"); *cf. Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act."). Finally, plaintiff fails to make any concrete argument that the chronology of alleged wrongs establishes a genuine "continuing" violation. For example, the initial wrongdoing described in claim [A][4] (describing supervisors who failed to respond to grievances tied to alleged wrongs by staff in 2004 and 2005) and the later wrongdoing described in claim [B][5] (alleging wrongdoing in mid-2007). Thus, there appears to be substantial breaks between the alleged wrongdoing of supervisors (who failed to act) and the alleged subsequent wrongdoing by staff. *See Hankins v. Beard*, Civ. A. No. 3:06-2372, 2008 WL 2950996, at *7 (M.D. Pa. July 29, 2008) (noting that "the intervening time periods between the [initial] events [complained of] and the fact that different ... staff members were involved in the purportedly unconstitutional conduct undermines any theory that they [i.e., all the events complained of] were part

---

[4] Doc. No. 18 at paragraphs 1 to 20.

[5] Doc. No. 18 at paragraphs 21 *et seq*.

of a continuing pattern").

### 3. Absence of Physical Injury

Section 1997e(e) of the Prison Litigation Reform Act[6] bars a prisoner-plaintiff from receiving compensatory damages for mental and emotional injury suffered while in custody absent a showing of at least *de minimus* physical injury. Plaintiff makes no allegations of physical injury in his amended complaint[7] relating to the Medical Defendants' conduct. Absent claims of physical injury, compensatory damages are barred. This bar does not extend

---

[6] [42 U.S.C. § 1997e(e)](#).

[7] In his opposition brief, plaintiff alleges physical injury for the first time. *See* [Doc. No. 76](#) at 3 (stating that after he was denied hernia surgery his "testicle is larger th[a]n a walnut"). Nothing like this factual allegation appeared in the amended complaint. In short, to the extent that plaintiff is alleging an Eighth Amendment medical claim against the Medical Defendants, it comes too late. A claim asserted for the first time in an opposition brief (or in a reply brief as with Araneda's service argument) is waived. The same logic applies to any state law claim asserted for the first time in his opposition brief.

Furthermore, plaintiff's allegation fails to place the Medical Defendants' alleged wrongdoing connected to his hernia within the limitations period. In other words, plaintiff fails to give even the approximate date of the Medical Defendants' personal involvement relating to his hernia. Even if the Court construed this factual allegation as part of or as impliedly amending the amended complaint, it is insufficiently detailed as to date. An exact date is not needed, but some date information is needed to put the defendant on notice of the claim and in order to place the alleged violation within the limitations period. *See, e.g.*, *Tucker v. United States*, [Civ. A. No. 3:06-1403, 2006 WL 2711647, at *3 (M.D. Pa. Sept. 21, 2006)](#) (noting that the "complaint lacks specific allegations of time and place," thereby "preclud[ing] a meaningful response from Defendants" and holding that it therefore "fails to satisfy the notice pleading requirements of Rule 8").

to equitable relief or to claims for nominal or punitive damages seeking to vindicate constitutional rights which have been egregiously violated. *See* [*Mitchell v. Horn*, 318 F.3d 523, 533-36 (3d Cir. 2003)](#).

    4.    Failure to State a Claim under *Twombly*

It appears that the amended complaint makes only two specific allegations in regard to the Medical Defendants. These allegations appear in what plaintiff identifies as claims "J" and "L".

First, in claim J, Paragraph 105, plaintiff alleges that

> On numerous different days, times and dates throughout the course of years, it's *believed* between 2005 and this year 2008, the following defendants not in alphabetical order: [including over 50 defendants and] Dr. Aran[e]da, [and] Phys. Asst. Mills ... all had personal involvement in one and/or repeated acts of criminal harassment, "a course of conduct" of the calculated harassment of the Plaintiff.

*See* Amended Complaint ¶ 105 (emphasis added). In Paragraph 107, the alleged verbal taunts were described in detail. These alleged comments by defendants described plaintiff's family in demeaning ways, used profanity, were racially insensitive, and attacked plaintiff's physical characteristics (i.e., calling him, among other things, "fat"). Some of the taunts may be construed as threats. *See* Amended Complaint ¶ 107 & note 1 (describing alleged threats directed against plaintiff's family). Plaintiff further states, in Paragraph 112, that this conduct occurred over the last 3 or 4 years. In Paragraph 106, it was alleged, without specification, that this conduct violated Pennsylvania Department of Corrections policy and Pennsylvania law and was deliberately

14

intended to harass plaintiff. *Id.* ¶ 112 (alleging violations of the "Pennsylvania crime code"[8] and of his Eighth and Fourteenth Amendment rights).

Second, in claim L, Paragraph 116, plaintiff alleges that:

On numerous different days, times and dates throughout the course of years, it's *believed* between 2005 and this year 2008, the following defendants not in alphabetical order: [including over 33 defendants and] Dr. Aran[e]da ... all had personal involvement in one and/or repeated acts of criminal racial harassment and discrimination.

*See* Amended Complaint ¶ 116 (emphasis added). He lists several racially inappropriate remarks as examples of defendants' wrongful conduct. *Id.* ¶ 117. He also asserts that some of the comments were made by "direct comment," but others were made by "reference." *Id.* It is not clear what he means by this. He asserts that the comments were in violation of his Eighth and Fourteenth Amendment rights and the Pennsylvania crime code and law. *Id.* ¶ 119.

The Medical Defendants argue that these allegations fail to comply with this Court's prior orders, (Doc. No. 11 & Doc. No. 15), Federal Rule of Civil Procedure 8 as interpreted most recently by *Twombly*, and, even if proved at trial, these allegations fail to state a claim. The Court agrees. And for that

---

[8] Plaintiff's amended complaint and other papers allege that certain defendants have injured him by violating any number of Pennsylvania criminal statutes. This action is not a prosecution under the criminal law, state or federal. These statutes do not supply the basis for any free-standing cause of action that might be heard under the Court's supplemental jurisdiction. *See* Doc. No. 18 (alleging, e.g., terroristic threats, criminal mischief, entrapment, etc.).

reason, it will recommend dismissing all claims against the Medical Defendants.

First, putting the Medical Defendants in a list with 30 or 50 other defendants does not clarify *what* the Medical Defendants said, *when* they said it, and to *whom* they said it. The Court notes that in both of the block quotes above, plaintiff said he "believed" defendants made the statements, not that he actually heard the Medical Defendants make alleged statement. If he did not hear defendants make these statements, then he has failed to supply the basis of his "belief." The Plaintiff alleged that the wrongdoing occurred in the last 3 to 4 years, which would place many allegations of wrongdoing outside the limitations period. Recently, the Supreme Court explained that the level of detail required in a complaint is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* No. 07-1015, 2009 WL 1361536, at *13. Where a plaintiff brings a cause of action in which key events are only known to one or more defendants, a court might allow the plaintiff to plead absent specific allegations of time and place, as long as the plaintiff had reason to believe the harm may have occurred in the limitations period. But where the allegations ostensibly relate to hurtful and threatening language directed at the plaintiff, one expects the plaintiff to identify what was said, when it was said, and to whom. Even if a specific date and time were not required, plaintiff must still allege that the alleged wrongful conduct occurred during the limitations period. Plaintiff has not done that

here. *Tucker v. United States*, Civ. A. No. 3:06-1403, 2006 WL 2711647, at *3 (M.D. Pa. Sept. 21, 2006) (Caputo, J.) (noting that the "complaint lacks specific allegations of time and place," thereby "preclud[ing] a meaningful response from Defendants" and holding that it therefore "fails to satisfy the notice pleading requirements of Rule 8"), *and Purveegiin v. Gonzales*, Civ. A. No. 3:07-1020, 2007 WL 4081393, at *3 (M.D. Pa. Nov. 15, 2007) (Vanaskie, J.) (complaint in Section 1983 action subject to dismissal for failure to make specific allegations of time and place). Beyond the defects which go to pleading, substantively, the allegations do not appear to state a claim. Racist and abusive language, i.e., verbal taunts, harassment, and threats – *absent action* – do not establish a constitutional violation for Section 1983 purposes. *See, e.g.*, *Brown v. James*, Civ. A. No. 4:03-0631, 2009 WL 790124, at *14 (M.D. Pa. Mar. 18, 2009) (McClure, J.) (holding that no due process violation arises from a verbal statement or threat) (collecting authority); *Maclean v. Secor*, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment ... is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under §1983.").

Finally, plaintiff's references to state law violations (the Pennsylvania code, the Pennsylvania criminal code, Department of Corrections regulations) does not withstand scrutiny under Rule 12(b)(6). In order to withstand scrutiny

under Rule 12(b)(6), plaintiff must make factual allegations in regard to each element of an asserted cause of action. But because plaintiff fails to specify *any* state cause of action, there is no way for the defendants to meaningfully respond as to whether plaintiff's amended complaint reaches the Rule12(b)(6) standard. Surely, it is not the defendants or this Court's role to check to see if the plaintiff's factual allegations state a cause of action under each and every conceivable cause of action existing under state law. Rather, plaintiff must describe in some fashion his state law theories of recovery or causes of action, i.e., his grounds for relief. Failure to do so waives his state law claims.

For the reasons elaborated above, it will be recommended that the Medical Defendants' Motion be granted and they be terminated from this action.

### B. The Correction Defendants' Motion

Many of the Corrections Defendants arguments are identical to those brought by the Medical Defendants. Thus the Court will merely restate its recommendations from above. Many of plaintiff's allegations in regard to the Corrections Defendants are clearly outside of the limitations period. All such allegations fail to state a claim. Likewise, in regard to any number of defendants, plaintiff fails to make specific allegations of personal involvement, and where personal involvement in wrongdoing is alleged, the allegations are not well-pled, for example, they lack dates and other details sufficient to put defendants on notice of the nature of the claim alleged. In regard to

defendants with supervisory authority, plaintiff makes conclusory allegations asserting that the supervisor-defendants had actual knowledge and acquiesced in wrongdoing by subordinates. Plaintiff fails to allege purpose, as required under the Supreme Court's recent *Iqbal* holding. Likewise, to the extent that the wrongdoing alleged by plaintiff includes abusive language, i.e., verbal taunts, harassment, and threats – even if racially charged – such wrongdoing, absent action, does not state a constitutional violation under Section 1983.

The Court now turns to the Corrections Defendants remaining arguments.

### 1. Hearing Examiner Mitchell is Entitled Quasi-Judicial Immunity

The Third Circuit has held that probation and parole officers engaged in "quasi-judicial" functions are entitled to immunity in regard to their adjudicatory duties. *See Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986). Defendants argue that Hearing Examiner Mitchell,[9] a Department of Corrections hearing examiner who examined plaintiff's grievances, holds a position analogous to parole officers and therefore should enjoy similar immunity. To make this argument, the Corrections Defendants state:

> Like the hearing examiner in *Harper*, Mitchell hears evidence against inmates and makes decisions as to their guilt or innocence. It is clear on the face of the Amended Complaint that Mitchell is being sued concerning his actions during the

_____

[9] Mitchell does not appear as a defendant on the docket.

misconduct hearing.
...
In this case, the Department's hearing examiners are not part-time adjudicators and they do not hold any other positions. While they are employees of the Department of Corrections, their sole ... function is to hear testimony and adjudicate inmate disciplinary charges. They are not subordinates of the Superintendent of the institution.
...
Pennsylvania's hearing examiners are 'professional hearing officers' and are situated very similarly to administrative law judges [who enjoy immunity for actions taken in their adjudicatory capacity].

Doc. No. 48 at 11-12. Although the Corrections Defendants' argument here may be persuasive, its wholly relies on the factual representations made by counsel in their opening brief. *Id.* The factual claims forming the basis of the argument, e.g., relating to the independence of Department of Corrections hearing examiners, are not discussed in the amended complaint, are not matters of public knowledge, nor are they discussed in any decisions cited by defendants. The factual allegations are not supported by evidence in the record (i.e., an undisputedly authentic public document or record which may be considered by the Court at the motion to dismiss stage), and they do not appear to be matters subject to judicial notice. Thus, the Court has no evidentiary basis to reach this argument on the merits.

2.    Processing of Plaintiff's Grievances

Plaintiff has made a series of allegations against defendants Grace, Burks, Lawler, and Wakefield, state officers having supervisory authority over other defendants and over SCI Huntingdon and SCI Graterford. The

Corrections Defendants have characterized these particular allegations as relating "solely ... [to the] processing and answering the Plaintiff's inmate grievances and appeals." (Doc. No. 48 at 9.) To the extent that these allegations relate to alleged denial of due process rights in the processing and answering plaintiff's grievances and appeals, it appears that they fail to state a claim. *See, e.g.*, *Heleva v. Kramer*, No. 06-1538, 2007 WL 215862, at \*2 (3d Cir. Jan. 29, 2007) *(per curiam)* (noting that "alleged obstruction of prison grievance procedures does not give rise to an independent claim"); *Hankins,* Civ. A. No. 3:06-2372, 2008 WL 2950996, at \*8 (M.D. Pa. July 29, 2008) (holding that prison officials failure to grant administrative relief in a grievance proceeding cannot establish a constitutional violation absent allegations that the "officials acted contrary to [some] Pennsylvania state law or regulation").

### C.   What Allegations Survive Defendants Rule 12(b)(6) Motions?

In light of the Court's legal recommendations above, the Court has assessed the discrete allegations and legal theories of the amended complaint, and recommends the following disposition:

(1) In regard to claim [A], at paragraphs 1 through 8, all of the allegations relate to conduct outside the limitations period.

(2) In regard to claim [A], at paragraphs 9 through 20, none of the allegations are well-pled. No allegations as to date are made; no allegations place the allegations within the limitations period. The allegations here fail to state a Section 1983 claim against the named defendants involved in grievance

proceedings; rather; the allegations merely assert that plaintiff was denied the relief he sought in the grievance proceedings. A failure of grievance procedures does not establish an independent constitutional claim. Plaintiff fails to allege (in other than conclusory fashion) that defendants had actual knowledge and acquiesced in the alleged wrongs. Moreover, none of the allegations if proven would establish that it was the defendants' purpose to cause the constitutional injury alleged. Indeed, plaintiff does not squarely allege that the defendants were on notice of the alleged wrongs as a result of his (the plaintiff) availing himself of prison grievance procedures. Rather he alleges that the defendants had "constructive notice."

(3) In regard to claim [B], at paragraphs 21 to 27, the allegations of verbal taunts and threats – although racially charged – fail to state a claim.

(4) *In regard to claim [C], at paragraphs 28 to 34, the excessive force claim against Nurse Gardner under the Eighth and Fourteenth Amendment survives. Defendants' motions do not challenge this claim.*

(5) In regard to claim [D], at paragraphs 35 to 44 (against various supervisors), and in regard to claim [E], at paragraphs 45 to 52 (against Deputy Secretary Moore), these allegations fail to state a due process claim under Section 1983. Plaintiff fails to allege (in other than conclusory fashion) that defendants had actual knowledge and acquiesced in the alleged wrongs. Moreover, none of the allegations if proven would establish that it was the defendants' purpose to cause the constitutional injury alleged. Furthermore,

to the extent that plaintiff is arguing that the defendants' unwillingness to take action exposed plaintiff to the risk of and actual subsequent harm (by actions taken by other defendants), he fails to allege what the specific subsequent harm was and how it was caused by plaintiff's failure to act.

(6) In regard to claim [E], at paragraph 46, plaintiff fails to allege what defendant or defendants wrongfully denied him his mail.

(7) In regard to claim [E], at paragraph 47 & 48, plaintiff alleges that Deputy Secretary Moore threatened[10] him with a misconduct should he continue to speak out against abuse. Absent some concrete action by defendant, this fails to state a claim. Moreover, given the number and length of the plaintiff's filings

---

[10] Allegedly defendant Moore also stated to plaintiff: "that [plaintiff] had assaulted prison officials and what made [plaintiff] believe that he would be treated any better at another Institution." Doc. No. 18 at 14 ¶ 48. Plaintiff characterizes this as deliberate indifference to a culture of wrongdoing by prison staff. This characterization does not follow. Neither Moore nor plaintiff has any interest in effectuating a transfer of the plaintiff if plaintiff's situation will be the same (or worse) after the transfer. The fact that Moore (allegedly) recognized that (plaintiff believed that) prison staff might exact retribution against a prisoner that had assaulted prison staff means that Moore knew the facts on the ground, or, at least, what plaintiff believe to be the facts on the ground. Moore's knowing that at some time some prison staff person might attempt to exact retribution is not the same as Moore having actual knowledge of some actual concrete wrongdoing by a known prison staff person at some specific time. The actual knowledge and acquiescence standard requires allegations which, if proven, would establish the latter (defendant's having knowledge of a concrete wrong at a particular time by a subordinate), not the latter (a mere abstract understanding that at some point in time a prison staff person might have acted or will in the future act outside the law or beyond his lawful discretion).

(in this action and in other actions in other federal courts), it does not appear that the plaintiff gave up the opportunity to file any claim in response to this and other alleged threats. Nor has plaintiff been denied access to the courts. This action establishes at least that much.

(8) *In regard claim [F], at paragraphs 53 to 62, the excessive force claim against defendants Boal,[11] Eberling, Goodman, Grove, Paige, and Lalli[12] under the Eighth and Fourteenth Amendment survives. Defendants' motions do not challenge this claim.*

*(9) In regard to claim [G], at paragraphs 63 to 70, a due process claim is stated, in part, against hearing examiner Mitchell. According to the amended complaint, Mitchell gave plaintiff 150 days of additional discipline after a hearing. In reaching his determination, Mitchell allegedly relied upon one video tape, the "hand held" tape, and noted that the "block tape" was unavailable.*

*To the extent the allegations merely assert that plaintiff was denied the relief he sought in the grievance proceedings, no due process claim is stated. The fact that a tape (i.e., the "block tape") was "unavailable" does not amount to a due process violation where the fact-finder in making his determination did not rely on the tape and other evidence in the record supports the fact-*

---

[11] The Court uses the spelling of Boal as it appears in the Corrections Defendants' motion. However, on the docket it appears to be spelled as Boat.

[12] "Lalli" is not listed as a defendant on the docket.

24

*finder's determination. See* Griffin v. Spratt, *969 F.2d 16, 22 (3d Cir.1992)* *(due process does not require prison officials to preserve allegedly intoxicating beverages brewed by prisoner, even though beverage sample may have constituted exculpatory evidence valuable to the prisoner). However, if the tape is available, it may be exculpatory, and arguably should be produced on demand (as plaintiff had requested during the misconduct proceedings). To the extent that the "hand held" tape was relied upon, but plaintiff was denied access to it, a due process claim is stated absent some claim of confidentiality (which does not appear in the defendants' brief) or the needs of prison security. Apparently defendant Lawler denied the plaintiff access to the hand held tape on appeal. This too appears at present to state a claim. See* Young v. Kann, 926 F.2d 1396 (3d Cir. 1991).

(10) *In regard to claim [G], at paragraphs 71 to 74, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendant House under the First, Fourth and Fourteenth Amendment survives. Defendants' motions do not challenge this claim.* However, the claim should be dismissed as to defendant Marlette: as only verbal threats were alleged.

(11) *In regard to claim [G], at paragraphs 75 to 78, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendant Wasual[13] under the First, Fourth, and Fourteenth Amendment survives. Defendants' motions do not challenge this claim.*

---

[13] Wasual does not appear as a defendant on the docket.

(12) *In regard to claim [G], at paragraphs 79 to 83, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendant Yedlosky under the Fourth, and Fourteenth Amendment survives. Defendants' motions do not challenge this claim.*

(13) *In regard to claim [G], at paragraphs 84 to 88, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendants Edwards and Culbert under the First, Fourth, and Fourteenth Amendment survives. Defendants' motions do not challenge this claim.*

(14) In regard to claim [G], at paragraph 89, no factual allegations or theory of liability is put forward for adjudication. Rather it is merely an effort to preserve a claim for future presentation.

(15) *In regard to claim [G[14]], at paragraphs 90 to 97, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendant Stever under the First, Fourth, and Fourteenth Amendment survives. Defendants' motions do not challenge this claim.* This allegation should be dismissed as to the other named defendants. Plaintiff fails to make allegations of personal involvement which if proven would establish either that mail had been tampered with or that any information (confidential or otherwise) had been disclosed to third-parties.

(16) In regard to claim [I], at paragraphs at 98 to 104, it fails to state a claim a mail tampering (or any other) claim. It fails to specify when the plaintiff wrote

---

[14] Apparently there is no claim [H] in the amended complaint.

the parties he expected (but failed) to receive mail from and the identity of those parties. No allegations of personal involvement are made against named defendants. The allegations made against Lawler, Grace, and Wakefield do not allege that they had actual knowledge and acquiesced in any discrete wrongs by subordinates, nor does plaintiff allege that it was Lawler, Grace, or Wakefield's purpose to cause any alleged harm.

(17) In regard to claim [J], at paragraphs 105 to 112, and in regard to claim [K], at paragraphs 113 to 115, in regard to claim [L], at paragraphs 116 to 119, plaintiff alleges verbal taunts and threats. Such claims – without action – do not amount to a constitutional violation. Plaintiff also alleges that the complained of taunts and threats occurred some time during the prior four years, placing any number of these unspecified verbal taunts and threats outside the limitations period.

(18) In regard to claim [M], at paragraphs 120 to 123, plaintiff alleges an array of food, food utensil, toiletry, and cell tampering claims against more than 20 defendants. Plaintiff fails to make allegations of personal involvement explaining which wrongful action was taken by which defendant and plaintiff fails to explain when each defendant engaged in the alleged wrongful conduct. Plaintiff generally alleges that the wrongs occurred between 2005 and 2008, but only part of December 2005 lies within the limitations period; this defect in pleading also applies to the more specific allegations of personal involvement in paragraph 122 which are not dated. These allegations fail to

state a claim under Rule 8 and under *Twombly*.

(19) In regard to claim [N], at paragraphs 124 to 129, plaintiff alleges an array of invasion of privacy related and disclosure claims against more than 15 defendants. Basically plaintiff alleges that defendants wrongfully disclosed to other "staff" information that was in some sense protected, i.e., information in which he had some "limited privacy rights." Plaintiff's position that information about his medical history is protected is supportable by precedent. *See, e.g.*, *Caldwell v. Beard*, Civ. A. No. 2:07-727, 2008 WL 2887810, at *6-7 (W.D. Pa. July 23, 2008) (prisoner's has a limited right to privacy in regard to information about the status of his own health, absent disclosure serving legitimate penological interests). But he seeks to extend constitutional protection to all sorts of other information which pertains to him, but which is not protected or otherwise confidential. *See* Doc. No. 18 at 26 (complaining of the dissemination of "other personal information" without specification). Likewise, plaintiff fails to make allegations of personal involvement explaining which wrongful disclosure was made by which defendant and plaintiff fails to explain when each defendant engaged in the alleged wrongful conduct. Plaintiff generally alleges that the wrongs occurred between 2005 and 2008, but only part of December 2005 lies within the limitations period. These allegations fail to state a claim under Rule 8 and under *Twombly*.

(20) In regard to claim [O], at paragraphs 130 to 134, brought against defendant Beard, and at paragraphs 135 to 137, brought against defendant

Vaughn, the amended complaint fails to make allegations of personal involvement in regard to alleged wrongs, fails to specify relevant dates and to place the alleged conduct in the limitations period, fails to allege (beyond conclusory and general statements) actual knowledge and acquiescence and purpose in regard to wrongdoing by subordinates, and fails to allege that defendants' action or inactions caused any harm, injury, or damages.

(21) In regard to claim [O], at paragraphs 138 to 142, brought against defendant Grace, the amended complaint fails to make allegations of personal involvement, fails to specify relevant dates and to place the alleged conduct in the limitations period, fails to allege (beyond conclusory and general statements) actual knowledge and acquiescence, fails to allege purpose (i.e., *Iqbal*'s "purpose" requirement clearly applies here as paragraph 139 is a discrimination claim) in regard to wrongdoing by subordinates, and fails to allege that defendant's action or inactions caused any harm, injury, or damages.

(22) In regard to claim [P], at paragraphs 142 to 150, plaintiff alleges an array of failure-to-supervise allegations against some 20 defendants. Plaintiff fails to make allegations of personal involvement explaining what each defendant knew of or observed (i.e., what specific wrongdoing by subordinates) and when they learned of it or observed it. Plaintiff generally alleges that the wrongs occurred over the prior four years, but four years prior to filing the amended complaint includes time beyond the limitations period. These

allegations fail to allege (beyond conclusory and general statements) actual knowledge and acquiescence and purpose in regard to wrongdoing by subordinates, and fail to allege that defendants' action or inactions caused any harm, injury, or damages. These allegations fail to state a claim under Rule 8 and under *Twombly*.

(23) *In regard to claim [I[15]], at paragraphs 1 to 7, at page 33, plaintiff alleges that defendants Lalli and Dickson[16] denied plaintiff water in violation of the Eighth Amendment. This claim survives as it is not opposed.*

(24) The gravamen of claim [II], at paragraphs 1 to 5, at pages 33 to 34, is that plaintiff was issued a greasy spoon. This fails to state an Eighth Amendment claim under *Twombly* and Rule 8. Plaintiff does not allege that the substance on the spoon was injurious or that he could not wipe the grease off.

(25) Plaintiff's final claim, claim [III], at paragraphs 1 to 8, at pages 34 to 36, is almost incomprehensible. It appears to be an Eighth Amendment claim for insufficient heat during the winter. It alleges that he was forced to stay in a cold cell during the winters of 2005-2006 and 2006-2007. Alleged rights violations taking place prior to December 5, 2005 are time barred. Actual

---

[15] Following the amended complaint and submitted contemporaneously with it were several additional pages making further allegations. These allegations were in three groups: I, II, and III. They appear to have been served with the amended complaint.

[16] Dickson does not appear as a defendant on the docket.

knowledge and acquiescence in the alleged wrong by the defendant-supervisors is only alleged in the most conclusory fashion; purpose is not alleged at all. No claim is stated under *Twombly* or under Rule 8.

## IV.    CONCLUSION

On the basis of the foregoing, **IT IS RECOMMENDED THAT**: the Medical Defendants' Motion, (Doc. No. 59), be **GRANTED**, and the Corrections Defendants' Motion, (Doc. No. 47), be **GRANTED** in part and **DENIED** in part. Specifically, the Court recommends:

(1)    **GRANTING** the Medical Defendants' Motion;

(2)    **DISMISSING** all claims against Defendants Araneda and Mills, and terminating those defendants from this action;

(3)    **DISMISSING** all claims against the remaining defendants, except:
(a) claim [C], at paragraphs 28 to 34, the excessive force claim against defendant Nurse Gardner under the Eighth and Fourteenth Amendment;
(b) claim [F], at paragraphs 53 to 62, the excessive force claim against defendants Boal, Eberling, Goodman, Grove, Paige, and Lalli under the Eighth and Fourteenth Amendment;
(c) claim [G], at paragraphs 63 to 70, a due process claim is stated, in part, against defendants Mitchell

and Lawler, in regard to the grievance proceedings denying plaintiff access to the hand held tape;

(d) claim [G], at paragraphs 71 to 74, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendant House under the First, Fourth and Fourteenth Amendment;

(e) claim [G], at paragraphs 75 to 78, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendant Wasual under the First, Fourth, and Fourteenth Amendment;

(f) claim [G], at paragraphs 79 to 83, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendant Yedlosky under the Fourth, and Fourteenth Amendment;

(g) claim [G], at paragraphs 84 to 88, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendants Edwards and Culbert under the First, Fourth, and Fourteenth Amendment;

(h) claim [G], at paragraphs 90 to 97, plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendant Stever under the First, Fourth, and Fourteenth Amendment;

and

(I) claim [I], at paragraphs 1 to 7, at page 33, plaintiff's denial of water claim in violation of the Eighth Amendment against Lalli and Dickson.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: May 29, 2009**

O:\shared\REPORTS\2007 Reports\07-2266-01.wpd