## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIE LAMAR YOUNG, JR.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:07-2266** |
| **v.** | : | **(CALDWELL, D.J.)** |
| | | **(MANNION, M.J.)** |
| **JEFFERY A. BEARD,** *et al.*, | : | |
| **Defendants.** | : | |

### REPORT AND RECOMMENDATION[1]

Pending before the court is defendant Gardner, Lalli, Boal, Dickson, Mitchell, Lawler, House, Whitsel, Yedlosky, Edwards, Culbert, and Stever 's motion for summary judgment. (Doc. No. 166). For the reasons set forth below, the court recommends that the defendants' motion be **GRANTED**.

### I.    BACKGROUND

Because the facts and procedural history have been more fully set forth in a previous report and recommendation, it will not be fully repeated here. *See* (Doc. No. 83).

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

By way of relevant background, the remaining claims in this action are:

(a) claim [C], at paragraphs 28 to 34, the excessive force claim against Defendant Nurse Gardner under the Eighth and Fourteenth Amendment;

(b) claim [F], at paragraphs 53 to 62, the excessive force claim against Defendants Boal, Eberling, Goodman, Grove, Paige, and Lalli under the Eighth and Fourteenth Amendments;

(c) claim [G], at paragraphs 63 to 70, a due process claim is stated, in part, against Defendants Mitchell and Lawler, in regard to the grievance proceedings denying Plaintiff access to videotapes;

(d) claim [G], at paragraphs 71 to 97, Plaintiff's mail tampering, disclosure, and invasion of privacy claims against defendants House, Wasual, Yedlosky, Edwards, Culbert, and Stever under the First, Fourth and Fourteenth Amendments; and

(e) claim [I], at paragraphs 1 to 7, at page 33, plaintiff's denial of water claim in violation of the Eighth Amendment against Defendants Lalli and Dickson.

(Doc. No. 110 at 4-5).

On March 8, 2010, defendants Boal, Culbert, Dickerson, Edwards, Gardner, House, Lalli, Lawler, Mitchell, Stever, Whitsel, and Yedlosky, filed a motion for summary judgment. (Doc. No. 166). The defendants' motion was accompanied by a brief as well as a statement of material facts. (Doc. No. 167); (Doc. No. 168). On March 26, 2010, the plaintiff filed a brief in opposition. (Doc. No. 172).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La*

*Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).[2]

III.    **STATEMENT OF MATERIAL FACTS**

The remaining defendants are Lawler, House, Lalli, Dickson, Mitchell, Boal, Eberling, Goodman, Grove, Paige, Whitsel, Yedlosky, Edwards, Culbert, Stever, and Gardner.

Excessive Force Claim against Nurse Gardner

In June of 2007, the plaintiff, who was confined in the RHU at SCI-Huntingdon, went on a hunger strike. Young Dep. 13:1-11, Dec. 21, 2009; (Doc. No. 169 at 13). Due to plaintiff's hunger strike, the Department of Corrections obtained an injunction to force feed the plaintiff. Young Dep. 13:8-24; (Doc. No. 169 at 13).  As such, he was tube fed three times a day. Young Dep. 13:22-24; (Doc. No. 169 at 13).  Each time the plaintiff was fed, he was put in a restraint chair. Young Dep. 13:25-14:10; (Doc. No. 169 at 13-14).

Plaintiff's complaint concerns a force feeding which he received on June

_____

[2] If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "'show[s]'--that is, point[s] out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

19, 2007. Young Dep. 14:15-17; (Doc. No. 169 at 14). The plaintiff contends that prior to the feeding he asked for water, but that Nurse Gardner refused to give him any water. Young Dep. 15:16-19; (Doc. No. 169 at 15). Instead, Nurse Gardner started inserting the tube in his throat, but the tube got stuck and he started to choke. Young Dep. 22:5-11; (Doc. No. 169 at 22). He again asked Nurse Gardner for water. Young Dep. 22:12-15; (Doc. No. 169 at 22). Plaintiff contends that, at this point, while she rammed the tube up his nose, she punched or slapped him in the face. Young Dep. 23:12-20; (Doc. No. 169 at 23). After she allegedly slapped him and ran the feeding tube up his nose, she allegedly said she did that because she was tired of hearing him call her friends racist. Young Dep. 26:1-4; (Doc. No. 169 at 26). As a result of the slap to his face, he stated that when he blew his nose, it bled a little and was sore from the tube that was forcefully pushed up his nose. Young Dep. 28:22-29:5; (Doc. No. 169 at 28-29).

<u>Excessive Force Claim against Defendants Boal, Eberling, Goodman Grove, Paige and Lalli</u>

On February 4, 2008, the plaintiff was housed in the GD-1006 cell in the RHU. Young Dep. 31:8-14, Dec. 21, 2009; (Doc. No. 169 at 30). On that day, Officers Boal, Paige, Grove, Eberling and Goodman strip searched plaintiff and then Officers Grove, Eberling, Goodman, and Paige entered plaintiff's

cell. Young Dep. 31: 17-40:12; (Doc. No. 169 at 30-32). Officer Boal who was present initially had disappeared. *Id.*

When the officers entered plaintiff's cell, he was on his knees in the doorway. Young Dep. 40:15-23; (Doc. No. 169 at 32). However, the officers had previously directed plaintiff to go to the rear of the cell so they could put leg irons on him, but the plaintiff refused to do so. Young Dep. 41:1-13; (Doc. No. 169 at 33). Plaintiff said he would only do so if they got a lieutenant and a camera. Young Dep. 41:11-13; (Doc. No. 169 at 33).

Defendant Eberling states that after defendant Young had dropped to his knees, he refused an order to stand. (Doc. No. 169 at 49). Instead, Young turned to his right and attempted to kick defendant Eberling. *Id.* Defendant Eberling then attempted to place plaintiff Young on the floor, and the plaintiff attempted to bite Officer Eberling. *Id.* Eventually, the plaintiff was secured. *Id.*

During this incident, defendant Lalli was in the Control Booth. Young Dep. 59:12-16; (Doc. No. 169 at 34). The plaintiff testified that he does not know if Lalli could see into his cell from the Control Booth. Young Dep. 59:23-60:2; (Doc. No. 169 at 34-35). Defendant Lalli appeared in his cell after the incident. Young Dep. 60:3-7; (Doc. No. 169 at 35). Officer Boal also appeared, after the incident took place, holding a hand held video camera.

Young Dep. 60:3-9; (Doc. No. 169 at 35).

Due Process Claims against Defendants Mitchell and Lawler

Following the February 4, 2008 incident, the plaintiff received a misconduct, specifically Misconduct Report No. B074896, charging him with assault and refusing to obey an order.[3] (Doc. No. 169 at 75). On February 7, 2008, defendant Mitchell conducted a hearing on Misconduct Report No. B074896. Mitchell Decl., (Doc. No. 169 at 73). Prior to the hearing, plaintiff Young requested to see videotapes from the handheld camera as well as the overhead security cameras in the RHU. *Id.* Mitchell denied the inmate's request, because there is no videotape equipment in the hearing room. *Id.* However, as reflected in the Disciplinary Hearing Report, defendant Mitchell was able to review the videotape made by the handheld camera on the date of the incident. *Id.* In addition, Mitchell was told by the Security Office that the videotapes from the security cameras outside the cell were not available. *Id.* Therefore, defendant Mitchell did not deny Young's request to see the videotape for any improper reason. *Id.* at 74.

Based on the plaintiff's testimony, the misconduct report and the

---

[3] The Misconduct was issued by defendant Eberling in connection with an incident in the inmate's cell on February 4, 2008.

videotape evidence, defendant Mitchell found Young guilty of both charges and sanctioned him to one hundred and fifty (150) days of disciplinary custody. *Id.* at 73-74.

The plaintiff appealed defendant Mitchell's decision. As such, the plaintiff also claims that defendant Superintendent Lawler incorrectly affirmed defendant Mitchell's decision to refuse to allow him to see the videotape from February 4, 2008 at the misconduct hearing. Young Deo. 68:3-15, (Doc. No. 169 at 41).The plaintiff believes that Superintendent Lawler should have remanded the matter back, so that the videotape could have been produced. *Id.*

<u>Mail Tampering, Disclosure and Invasion of Privacy Claims against Defendants House, Whitsel, Yedlosky, Edwards, Culbert and Stever</u>

Plaintiff claims that defendants House, Whitsel, Yedlosky, Edwards, Culbert and Stever tampered with his legal mail.

Defendant House is a Corrections Officer 2 at SCI-Huntingdon, and he has held that position since 2004. House Decl., (Doc. No. 169 at 66). As a Corrections Officer 2, defendant House acts as the lead worker and supervises other Corrections Officers. *Id.* In December of 2005, House was working in the G-Block RHU on the 2 to 10 shift. *Id.* As the RHU Block Sergeant, defendant House never sorted the inmate mail. *Id.* That would be

done by other Officers. *Id.* The usual procedure is that inmate mail is sorted by name and number and the cell number is placed on the piece of mail by hand. *Id.* The mail is then delivered to the inmate's cell. *Id*

Defendant House did not discuss inmate Young's personal mail or family photographs with other inmates or staff. *Id.* at 67. He understands that it would be a violation of Department policy to discuss an inmate's personal mail and items with other inmates. *Id.* House also understands it would be a violation of Department policy to discuss such items with other staff, unless safety and security interests were involved. *Id.* In addition, defendant House never released any personal information about inmate Young to staff or other inmates. *Id.*

In June of 2006, defendant Yedlosky held the position of Corrections Officer 1, and as such, he was charged with distributing inmate mail. Yedlosky Decl., (Doc. No. 169 at 84). Defendant Yedlosky always delivered inmate Young's mail to his cell in accordance with Department Policy DC-ADM 803 ("Inmate Mail and Incoming Publications"). *Id.* at 85. Under that policy, incoming and outgoing correspondence, other than privileged correspondence, may be opened and inspected if there is reason to believe that the security of the facility may be impaired or the policy is being violated.

*Id.* However, Corrections Officers are not to read inmate mail. *Id.*

Yedlosky never read inmate Young's personal mail or otherwise tampered with it. *Id.* at 84. Defendant Yedlosky did not disclose any personal information contained in plaintiff's mail, including the death of his uncle, as he alleges. *Id.* at 84-85. Yedlosky never said to Young that he would not be receiving mail from a library in Pittsburgh. *Id.* at 85. Defendant Yedlosky also never harassed inmate Young or made any threats toward him or his family. *Id.*

In September of 2007, defendant Stever held the position of Corrections Officer 1. Stever Decl., (Doc. No. 169 at 81). As a Corrections Officer 1, he was charged with distributing inmate mail. *Id.* Defendant Stever states that he never mishandled inmate Young's personal mail or otherwise tampered with it. *Id.* at 82. He did not disclose any personal information contained in plaintiff's mail. *Id.* Stever never said to Young that he would not be receiving mail from a library in Pittsburgh. *Id.* This includes any books about boxing. *Id.* At all times material, defendant Stever delivered inmate Young's mail to his cell as directed by Department Policy DC-ADM 803.[7] *Id.* In addition, defendant

---

[7] Under that Policy, Corrections Officers must first verify the inmate's name and cell number when delivering inmate mail.

Stever never harassed inmate Young or made any threatening statements toward him or his family. *Id.*

In June of 2006, defendant Culbert was a Corrections Officer 1 at SCI-Huntingdon, and as such, he was charged with distributing inmate mail. Culbert Decl., (Doc. No. 169 at 60). Defendant Culbert states that he did not disclose any information concerning Young's daughter or where she resides, and that he did not yell out personal information about Young's family. *Id.* at 60-61. At all relevant times, defendant Culbert states that he delivered inmate Young's mail to his cell as directed by Department Policy DC-ADM 803. *Id.* at 61. Furthermore, defendant Culbert never harassed inmate Young, never made any threatening statements toward him or his family, and never used any racist language against the plaintiff. *Id.*

Defendant Edwards, who has been a Corrections Officer 1 at SCI-Huntingdon since 2004, was also charged with distributing inmate mail. Edwards Decl., (Doc. No. 168 at 63). With respect to the plaintiff, defendant Edwards delivered inmate Young's mail to his cell in accordance with Department Policy DC-ADM 803. *Id.* at 64. As such, defendant Edwards states that he never disclosed any information concerning Young's daughter or where she resides, and he did not shout out personal information about

Young's family on the block. *Id.* Furthermore, defendant Edwards never harassed inmate Young, called him racist names, or threatened him or his family in any manner. *Id.*

Denial of Water Claims against Defendants Lalli and Dickson

Defendant Lalli is currently employed by the Pennsylvania Department of Corrections as a Corrections Officer 3 or Lieutenant at SCI-Huntingdon. Lalli Decl., (Doc. No. 169 at 69). In March of 2008, defendant Lalli held the position of G-Block RHU Lieutenant working on the 2-10 shift. *Id.* The main function of a RHU Lieutenant is to oversee the operation of the RHU and ensure Department policies and procedures are followed. *Id.*

Inmates in the RHU are moved on a regular basis. *Id.* Prior to the move, staff inspects the cell for cleanliness. *Id.* In addition, inmates are offered a cleaning bucket and cleaning agent if they wish to clean the cell themselves. *Id.*

On March 7, 2008, Young moved into GD 1016 cell in the RHU. *Id.* at 70. To the best of defendant Lalli's knowledge, there was no feces or other material in the faucet in that cell, when Young was moved into it. *Id.* Plaintiff Young was offered the opportunity to clean the cell when he was moved and he refused. *Id.* In addition, on March 14, 2007, Lt. Stevens drained the faucet

in Young's cell and no foreign material was found. *Id.*

At no time did defendant Lalli place the inmate in a hazardous cell. *Id.* There was no reason for the plaintiff not to drink from the faucet in his cell. *Id.* Inmate Young has made similar allegations about dirty faucets before and after this incident. *Id.* In each case, no basis was found for his allegations. *Id.*

## IV. LEGAL ANALYSIS

The defendants have raised various arguments as to why they are entitled to summary judgment. The court will consider these arguments below.

### A. Excessive Force Claims

In an excessive force claim the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In *Hudson*, the United States Supreme Court specifically rejected a "deliberate indifference" standard for judging claims of excessive use of force, finding that standard inappropriate under conditions where corrections officials must make decisions "in haste, under pressure, and frequently without the luxury of a second chance." *Id.* (quoting *Whitley*, 475 U.S. at 320).

To determine whether a correctional officer has used excessive force

in violation of the Eighth Amendment, courts look to several factors including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321 (citations omitted)). Moreover, summary judgment in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Brooks*, 204 at 106 (quoting *Whitley*, 475 U.S. at 322)).

Courts have held that not all tortious conduct which occurs in prison rises to the level of an Eighth Amendment violation. *See Howell v. Cataldi, 464 F.2d 272, 277 (3d Cir. 1972)* (not all tortious conduct redressable under state law constitutes cruel and unusual punishment). Furthermore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." *Ostrander v. Horn*, 145 F. Supp. 2d 614, 618 (M.D. Pa. 2001)(citing *Johnson v. Glick*, 481

F.2d 1028, 1033 (2d Cir. 1973), *cert denied*, 414 U.S. 1033 (1973)). Indeed, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327)).

While an inmate need not suffer serious injuries to set forth a claim of excessive force, the extent of an injury suffered by an inmate is a factor that may be considered in determining whether the use of force is excessive. *Hudson*, 503 U.S. at 9. In addition, courts considering claims of excessive force have generally held that a single, isolated incident does not rise to the level of a constitutional violation. *See e.g., Norman v. Taylor*, 25 F.3d 1259, 1262-64 (4th Cir. 1994); *White v. Holmes*, 21 F.3d 277, 280-81 (8th Cir. 1994); *Black Spotted Horse v. Else*, 767 F.2d 516 (8th Cir. 1985); *Ricketts v. Derello*, 574 F. Supp. 645 (E.D. Pa. 1983).

### 1. Defendant Gardner

Defendant Gardner argues that her alleged single slap of the plaintiff's face during the tube feeding on June 19, 2007 does not amount to an Eighth Amendment violation. The court agrees. Generally, a single slap in the face

does not constitute an objectively serious use of physical force. *See Caldwell v. Luzerne County Corrections Facility Management Employees*, No. 09-0545, 2010 U.S. Dist. LEXIS 81341, at *24-25 (M.D. Pa. Aug. 11, 2010) (finding that one punch in the back of the head is not the type of condition which rises to an Eighth Amendment violation, and that at best it amounted to a *de minimus* use of force); *Harcum v. LeBlanc*, No. 09-2512, 2010 U.S. Dist. LEXIS 112754, at *11-12 (E.D. Pa. Oct. 21, 2010) (collecting cases); *Cyrus v. Hogsten*, No. 06-2022, 2007 U.S. Dist. LEXIS 2935, at *5-6 (M.D. Pa. Jan. 16, 2007) (single slap to the back of inmate's head does not violate the Eighth Amendment). Moreover, the fact that this was an isolated incident further supports a finding that the single slap or punch to plaintiff's face did not amount to an Eighth Amendment violation. *See e.g.*, *Norman*, 25 F.3d at 1262-64; *White*, 21 F.3d at 280-81; *Black Spotted Horse*, 767 F.2d 516; *Ricketts*, 574 F. Supp. 645.[8]

In addition, the plaintiff alleges that defendant Gardner's actions violated his Fourteenth Amendment rights. To the extent the plaintiff intended to bring a separate excessive use of force claim under the Fourteenth Amendment,

---

[8] In addition, defendant Gardner correctly argues that the plaintiff's injury to his nose was minor at best and probably caused by the insertion of the feeding tube, and not by any alleged slap by defendant Gardner.

17

any such claim should be dismissed because excessive use of force claims by convicted inmates are properly analyzed under the Eighth Amendment. *See Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). To the extent the plaintiff may have intended to bring a substantive due process claim under the Fourteenth Amendment, any such claim should be dismissed as the plaintiff's allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment. *See Betts v. New Castle Youth Development Center, 621 F.3d 249, 261 (3d Cir. 2010)* ("Because these allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses Betts's substantive due process claims.").

Consequently, the court recommends that summary judgment be granted in favor of defendant Gardner on plaintiff's Eighth and Fourteenth Amendment claims.

### 2. Defendants Lalli and Boal

To the extent plaintiff brings excessive force claims against defendants Lalli and Boal, the defendants argue that they are entitled to summary judgment. The court agrees. The uncontrovereted evidence in the record indicates that defendants Lalli and Boal were not present during the incident

in plaintiff's cell on February 4, 2008. Specifically, the plaintiff testified, at his deposition, that defendant Boal disappeared prior to the incident, and that both defendants Lalli and Boal appeared *after* the incident. In addition, there is no evidence in the record that indicates defendant Lalli could see inside the plaintiff's cell from the control booth. Because there is no competent evidence in the record which indicates these defendants were present during the February 4, 2008 incident, the court recommends that summary judgment be granted in favor of defendants Lalli and Boal on plaintiff's Eighth Amendment excessive force claim. *See Cyrus v. Hogsten*, No. 06-1665, 2006 U.S. Dist. LEXIS 76533, at *4 (M.D. Pa. Oct. 20, 2006) ("Defendant Feltman cannot be held liable for alleged excessive force suffered by the plaintiff during an incident in which defendant Feltman was not present.").

In addition, to the extent plaintiff intended to bring an Eighth Amendment claim against defendants Lalli and Boal due to their failure to intervene, the court also recommends that summary judgment be granted in favor of defendants Lalli and Boal. "If a police [or corrections] officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d

[Cir. 2002)](#) (citations omitted). As discussed above, there is no evidence in the record that indicates the defendants were present during the incident. To the contrary, the record clearly indicates that the officers arrived at plaintiff's cell *after* the incident, and as such, the defendants could not have intervened. Moreover, there is no evidence in the record to support a finding that the officers were aware of the incident or that the officers could have arrived at the plaintiff's cell any sooner. Because there is no evidence in the record to support a finding that defendants Lalli and Boal had a realistic opportunity to intervene, the court recommends that summary judgment be granted in favor of defendants Lalli and Boal on plaintiff's failure to intervene claim under the Eighth Amendment. *See [id.](#)* [at 652](#).

Finally, to the extent the plaintiff may have intended to bring a substantive due process claim under the Fourteenth Amendment, any such claim should be dismissed as the plaintiff's allegations against defendants Lalli and Boal fit squarely within the Eighth Amendment. *[See Betts v. New Castle Youth Development Center](#)*[, 621 F.3d 249, 261 (3d Cir. 2010)](#) ("Because these allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses Betts's substantive due process

claims.").

Therefore, the court recommends that summary judgment be granted in favor of defendants Boal and Lalli on plaintiff's Eighth and Fourteenth Amendment claims.

**B.    Denial of Water Claims**

The Eighth Amendment of the United States Constitution prohibits the infliction of cruel or unusual punishment. U.S. Const. amend. VIII. The Supreme Court has held that only "extreme deprivations are required to make out a conditions of confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). An Eighth Amendment prison conditions claim requires proof of both objective and subjective elements. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Under the objective element, plaintiff's claim must state facts that show the defendants deprived him of the "minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347(1981)(citation omitted)). Under the subjective element, plaintiff must show facts that establish the defendants acted with such deliberate indifference that they showed a wanton disregard to the interests of plaintiff. *See Whitley v. Albers*, 475 U.S. 312, 320 (1986).

### 1. Denial of Clean Water

Plaintiff claims that defendants Lalli and Dickson deprived him of clean drinking water in his cell for seven days. Specifically, plaintiff alleges that the faucet in his cell contained fecal matter and that the defendants refused to clean it from March 7, 2008 through March 14, 2008.

Defendants Lalli and Dickson argue that they are entitled to summary judgment on plaintiff's Eighth Amendment claim that he was denied safe drinking water in his cell for seven days. The court agrees. The uncontroverted evidence in the record indicates that there was no foreign material in plaintiff's faucet from March 7, 2008 through March 14, 2008. As such, there is no competent evidence in the record to support a finding that the water in his cell contained feces or any other foreign material that would make the water in his cell unsafe to drink. Furthermore, the plaintiff was offered the opportunity to clean his cell and he refused to do so. Finally, even if the plaintiff was denied clean water in his cell for seven days, this still would not amount to an Eighth Amendment violation. *Lane v. Culp*, No. 05-0576, 2007 U.S. Dist. LEXIS 100423, at *7-8 (W.D. Pa. Feb. 15, 2007) (inmate's claim of deprivation of running water for seven days, even when he is forced to sleep on the floor without clothing or bedding, does not rise to the level of

a constitutional violation). Therefore, the court recommends that summary judgment be granted in favor of defendants Lalli and Dickson on this claim.

2.    Denial of Hot Water

Plaintiff also claims that defendants Lalli and Dickson violated his Eighth Amendment rights by depriving him of hot water in his cell from March 7, 2008 through approximately April 15, 2008.

The court finds that summary judgment is appropriate on this claim as there is simply no evidence in the record to support a finding that plaintiff was deprived of hot water in his cell from March 7, 2008 through April 15, 2008. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir.2000) (holding that "[a]t summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."). To the contrary, the evidence indicates that plaintiff had clean water in his cell that was safe to use. However, even assuming there was no hot water in plaintiff's cell for that period of time, this still does not appear to amount to a violation of the Eighth Amendment. *See Jones v. Cathel*, No. 05-3170, 2006 U.S. Dist. LEXIS 16572, at *10 (D.N.J. Mar. 17, 2006) ("The Court finds that the lack of a hot water sink on one wing of a prison for five weeks is not sufficiently serious to constitute violation of

the Eighth Amendment.").

Consequently, the court recommends that summary judgment be granted in favor of defendants Lalli and Dickson on plaintiff's Eighth Amendment claims regarding denial of water.[9]

## C.    Procedural Due Process Claim

Plaintiff claims that his procedural due process rights were violated at his misconduct hearing on February 7, 2008 because he was not allowed to view the videotapes of the February 4, 2008 incident or use the alleged videotapes as evidence. More specifically, plaintiff claims that defendant Mitchell should have permitted the plaintiff to view the videotape at the misconduct hearing, and that defendant Lawler incorrectly affirmed defendant Mitchell's denial of his request to see the videotape at the misconduct hearing. Because the plaintiff was found guilty at his misconduct hearing, he received one hundred and fifty (150) days of disciplinary custody.

---

[9] The court notes that plaintiff also assert that the defendants Lalli and Dickson's actions violated his rights under the Fourteenth Amendment. To the extent the plaintiff may have intended to bring a substantive due process claim under the Fourteenth Amendment, any such claim should be dismissed as the plaintiff's allegations fit squarely within the Eighth Amendment. *See Betts*, 621 F.3d at 261 ("Because these allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses Betts's substantive due process claims.").

Defendants argue that plaintiff has no protected liberty interest in not being in administrative detention, and therefore, his procedural due process claim must fail. The court agrees. Procedural due process rights are triggered by a deprivation of a legally cognizable interest, and such a deprivation occurs when the prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Young v. Beard*, 227 Fed. Appx. 138, 141 (3d Cir. 2007) (quoting *Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2003)); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Atypical and significant" is generally ascertained "by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997).

It has long been held that an inmate has no constitutionally protected liberty interest in his place of confinement, transfer, or classification, or in the particular modes or features of confinement. *Sandin*, 515 U.S. at 483; *see also Brown v. Hogsten*, No. 06-0262, 2006 U.S. Dist. LEXIS 49133, at *4 (M.D. Pa. July 19, 2006) ("The Constitution does not confer inmates a liberty interest in retaining or receiving any particular security or custody status."); *Oden v. Caison*, 892 F. Supp. 111, 111 (E.D. Pa. 1995) (same). The Third

Circuit explained, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Asquith v. Dep't of Corrs.*, 186 F.3d 407, 410 (3d Cir. 1999) (internal citation omitted).

Moreover, the Third Circuit has held that a prisoner's placement in administrative detention and an extended stay in a Special Housing Unit do not constitute atypical and significant hardships. *Wilson v. Hogsten*, 269 Fed. Appx. 193, 195-96 (3d Cir. 2008). *See e.g.*, *Smith v. Mensinger*, 293 F.3d 641 (3d Cir.2002) (upholding district court's dismissal of prisoner's due process claim concerning seven months disciplinary detention); *Griffin*, 112 F.3d at 706 (holding that it is not atypical to be exposed to conditions of administrative custody for periods as long as 15 months as such stays are within the expected parameters of an inmate's sentence). In fact, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues." *Griffin*, 112 F.3d at 709.

Here, the plaintiff was placed in disciplinary custody for a period of one

hundred and fifty (150) days because he was found guilty at his misconduct hearing. As such, the court does not find that plaintiff has sufficiently alleged a protectable liberty interest that would trigger a procedural due process right. *See Sandin*, 515 U.S. at 486 (confinement in administrative or punitive segregation will rarely be sufficient without more to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest). *See also Torrealba v. Hogsten*, No. 06-0108, 2009 U.S. Dist. LEXIS 93992, at *29-30 (M.D. Pa. Oct. 8, 2009)(finding that maintaining plaintiff in administrative confinement for a two year period, pursuant to a detention order, without any hearing does not impose such an atypical or significant hardship as a matter of law and so he was not deprived of any liberty interest)(collecting cases).

In addition, to the extent the plaintiff may be asserting that the defendants should have permitted the plaintiff to view and use the videotapes as evidence, the prison's failure to comply with state procedures, on their own, do not afford a due process liberty interest. *See Ayers v. Campbell*, 267 Fed. Appx. 176, 177 (3d Cir. 2008) ("Ayers complains that he was not permitted to see the evidence against him or to call any witnesses at his misconduct hearing. Insofar as he argues that the prison's failure to comply

with state procedures violates due process, he states no claim, because state procedures on their own do not afford prisoners a due process liberty interest.").

Because the plaintiff has not been deprived of any liberty or property interest sufficient to invoke procedural due process concerns, the court recommends that summary judgment be granted in favor of defendants Mitchell and Lawler on plaintiff's procedural due process claim.

### D.    Interference with Personal Mail Claims

Plaintiff brings claims against defendants House, Whitsel[10], Yedlosky, Edwards, Culbert and Stever for mail tampering, disclosure, and invasion of privacy in violation of the First, Fourth and Fourteenth Amendments.[11]

Defendants argue that they are entitled to summary judgment on plaintiff's claims concerning his mail because plaintiff only alleges interference

---

[10] The court notes that plaintiff refers to this defendant as defendant Wasual.

[11] The court notes that it will construe these claims as being brought pursuant to the First and Fourteenth Amendments only. *See Yelardy v. Taylor*, No. 03-1032, 2006 U.S. Dist. LEXIS 9832, at *40 (D. Del. Mar. 14, 2006) (Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments.). Consequently, the court finds that there is no basis for construing plaintiff's mail tampering claims as a violation of the Fourth Amendment.

with his personal mail. The court agrees.

"In the First Amendment context, . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Generally, prisoner non-legal mail can be opened and read outside the inmate's presence, and does not violate the prisoner's constitutional rights. *See Ali v. Howard*, No. 05-0102, 2008 U.S. Dist. LEXIS 76162, at *17 (D. Del. Sept. 30, 2008) ("Prison inmates have no expectation of privacy regarding their personal mail."), *aff'd*, 353 Fed. Appx. 667, 670 (3d Cir. 2009) (Ali provides no evidence to support that the allegedly five or six opened letters were marked as legal mail, and therefore, he cannot establish a First Amendment violation.); *Hamilton v. Messick*, No. 03-0807, 2005 U.S. Dist. LEXIS 5255, at *9 (D. Del. Mar. 31, 2005) (collecting cases). *See also* Smith v. Boyd, 945, F.2d 1041, 1043 (8th Cir. 1991).

Here, the plaintiff merely alleges that the defendants occasionally read his personal mail outside of his presence. All of plaintiff's allegations with respect to his mail tampering claims concern his personal mail. Specifically, plaintiff takes issue with the defendants' treatment of a card, family pictures, a letter from the University of Pittsburgh's bookstore, a letter from a library,

and letters from family members. Moreover, the plaintiff does not allege that his personal mail was ever withheld, just inappropriately read and disclosed. Because the plaintiff only alleges the defendants disclosed, read, and interfered with his *personal* mail on five occasions during a period of twenty-one (21) months, the court recommends that summary judgment be granted in favor of defendants House, Whitsel, Yedlosky, Edwards, Culbert and Stever on plaintiff's mail tampering claims under the First and Fourteenth Amendments. *See Robinson v. Ricci*, No. 08-2023, 2008 U.S. Dist. LEXIS 98154, at *32 (D.N.J. Dec. 1, 2008) (The assertion that *legal* mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim.); *Fuentes v. N.J. Office of the Public Defenders*, No. 05-3446, 2006 U.S. Dist. LEXIS 1147, at *16 (D.N.J. Jan. 11, 2006) (Fuentes does not allege sufficient facts that may demonstrate a pattern of actual and deliberate interference with his *legal* mail.).

## V.    RECOMMENDATION[12]

For the reasons elaborated above, **IT IS RECOMMENDED THAT**:

---

[12] For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.

**(1)** Defendants' motion for summary judgment, (Doc. No. 166), be

**GRANTED**, and

**(2)** The only remaining claim, claim [F] at paragraphs 53 to 62, the excessive force claim against defendants Eberling, Goodman, Grove and Paige under the Eighth Amendment, be set down for trial in accordance with a schedule set by the trial judge.[13]

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE:** February 11, 2011

O:\shared\REPORTS\2007 Reports\07-2266-02.wpd

---

[13] The court is recommending that this claim proceed because defendants Eberling, Goodman, Grove and Paige failed to address this claim in their motion for summary judgment. As such, the court recommends that plaintiff's Eighth Amendment excessive force claim, with respect to the February 4, 2008 incident in his cell, proceed to trial as the deadline for filing dispositive motions has passed. (Doc. No. 118). However, the court only recommends that plaintiff's Eighth Amendment excessive force claim proceed against defendants Eberling, Goodman, Grove and Paige. As such, to the extent plaintiff intended to bring a Fourteenth Amendment claim against defendants Eberling, Goodman, Grove and Paige, the court recommends any such claim be dismissed. *See Betts v. New Castle Youth Development Center*, 621 F.3d 249, 261 (3d Cir. 2010) ("Because these allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses Betts's substantive due process claims."). *See Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) (excessive use of force claims by convicted inmates are properly analyzed under the Eighth Amendment).